2009 ND 183

Rodney THOMPSON and Karen Thompson, individually and derivatively on behalf of ARRK Investments, Inc. d/b/a Ultimate Rent All, Plaintiffs, Appellees, and Cross-appellants,

v.

Ronald E. SCHMITZ, ARRK Investments, Inc., and R.E.S. Investments, Inc., d/b/a Ultimate Transportation, Defendants, Appellants, and Cross-appellees

and

David T. Nameniuk, CPA, Defendant.

No. 20080191.

Supreme Court of North Dakota.

Oct. 16, 2009.

Rehearing Denied Nov. 17, 2009.

Michael Dan Nelson, West Fargo, N.D., for plaintiffs, appellees, and cross appellants.

Brad A. Sinclair, Fargo, N.D., for defendants, appellants, and cross-appellees.

MARING, Justice.

[¶1] Ronald E. Schmitz, ARRK Investments, Inc. ("ARRK"), and RES Investments, Inc. ("RES"), doing business as Ultimate Transportation, appeal from an amended judgment awarding Rodney Thompson and Karen Thompson damages for conversion, attorney fees, and costs and disbursements in their personal and shareholder derivative action involving ARRK. The Thompsons have cross-appealed. We conclude the district court erred in basing its decision on a theory not pled by the parties and in treating certain assets as non-corporate assets. We affirm in part, reverse in part, and remand for the preparation of findings addressing the issues raised by the pleadings.

I

[¶2] RES is a North Dakota corporation which conducts business as Ultimate Transportation in Fargo. RES sold and rented trailers and trailer accessories. Schmitz and his wife originally owned 100 percent of RES, but since his divorce in 2004, Schmitz individually owns 100 percent of RES. Rodney Thompson was the manager of Ultimate Transportation and had been employed by RES since 1999.

[¶3] In 2001, Thompson asked Schmitz if he would be interested in creating a new corporation to handle the rental portion of Ultimate Transportation's business, which could later be expanded to include rental of items other than trailers and trailer accessories. Thompson wanted an ownership interest in the new business. Thompson and Schmitz decided a new corporation could involve Thompson and his wife, Karen Thompson, and Schmitz and his wife, Annette Schmitz. Schmitz told Thompson that if the Thompsons wanted to go into business with him, they would have to pay him $150,000 to "buy-in." Schmitz told Thompson the $150,000 represented "the

lost revenues that I was going to incur that I would automatically receive without having them as a partner," because RES already had the trailers, equipment, and personnel that would be used in the new business. However, the Thompsons had insufficient funds available to contribute to the new business. With the assistance of Schmitz and his banker at Western State Bank, the Thompsons obtained a $150,000 loan. Because the Thompsons were eligible to borrow only $100,000, Schmitz guaranteed the additional $50,000 of the loan.

[¶ 4] On August 1, 2001, the Thompsons paid Schmitz the $150,000 to become one-half owners of the new business which would lease trailers owned by RES. There was no written agreement covering the details of the transaction. When Schmitz received the $150,000, he applied the funds, with the Thompsons' knowledge, to a building construction loan RES had with Western State Bank. In October 2001, articles of incorporation were acquired for ARRK, which was owned one-half by the Schmitzes and one-half by the Thompsons. The four incorporators certified that each had received 250 shares of stock in ARRK on August 1, 2001.

[¶ 5] ARRK did business under the name of Ultimate Rent All and operated from the same location as RES. ARRK paid RES $1,200 per month, and later $1,500 per month when the businesses moved into a new building, as partial payment for the use of RES's trailers, equipment, and employees. Schmitz's certified public accountant, David Nameniuk, prepared some corporate documents for ARRK, including a Subchapter S corporation election form. Nameniuk provided accounting services to Schmitz, the Thompsons, ARRK, and RES.

[¶ 6] The district court explained that corporate formalities were largely ignored during ARRK's existence:

20. . . . In establishing ARRK, Thompson and Schmitz recognized few of the formalities of a corporation. For example, no stock certificates were ever issued to the Thompsons, no bylaws were ever adopted by ARRK, there was never any meeting or election of a board of directors, there was never any meeting of shareholders, there was no corporate minutes kept, and although the financial statements of the corporation reflect a $150,000 distribution to Schmitz, there was never any board or shareholder action authorizing such a transfer. There was also no written document by which Schmitz or ARRK purport to convey to Thompson any stock certificates for $150,000. The $150,000 at issue was never an asset of ARRK, rather it was paid by Thompson to Schmitz personally.

21. After Thompson paid Schmitz the $150,000 on August 1, 2001, Schmitz sought advice from Nameniuk concerning the transaction. Schmitz told Nameniuk that he intended to contribute $100,000 of inventory and equipment to ARRK *in addition to* the stream of income from trailer rentals for the $150,000 that Thompson had paid to him. Although Schmitz and Thompson understood that the $150,000 went to Schmitz personally, Nameniuk proposed a scenario (Exhibit 170) that represented that the $150,000 had been paid by Thompson directly into the corporation ARRK, that Schmitz transferred into ARRK $100,000 of inventory and equipment which he received as a distribution personally from R.E.S. Investments, and that the $150,000 in cash was then distributed to Schmitz. Schmitz also provided to Nameniuk (Exhibit 4) a hand written list of the trailers that he purported to convey to ARRK. This scenario was developed by Nameniuk (on infor-

mation he received from Schmitz), and he believed that Schmitz could avoid $39,000 in income taxes by structuring the transaction in this fashion. This "scenario" was total fiction.... The $150,000 was never put into any account of ARRK, nor distributed by ARRK to Schmitz. Schmitz likewise never transferred to ARRK $100,000 of inventory and equipment as he represented. Nameniuk believed that the inventory and equipment was transferred to ARRK based on Schmitz's representation.

[¶ 7] ARRK's revenues from trailer rentals increased from 2001 through April 2005, but the parties' business relationship deteriorated. By then, Schmitz was divorced and had a 50 percent ownership interest in ARRK. Although Schmitz had represented to Thompson that Thompson would be able to make the payments on the $150,000 loan from his annual bonuses from RES, Schmitz revised the bonus program in 2004, decreasing Thompson's bonus for 2005 by $20,000.

[¶ 8] In May 2005, the Thompsons, individually and derivatively on behalf of ARRK, brought this action against Schmitz, ARRK, RES, and Nameniuk seeking damages, dissolution of ARRK, and an award of attorney fees. In an amended complaint, the Thompsons alleged Schmitz had converted the $150,000 from ARRK, diminishing "their entitlement to dividends, bonus or other compensation." Alternatively, the Thompsons alleged they had loaned Schmitz $150,000 and he had failed to make any payments on the loan. The Thompsons further alleged Schmitz breached his fiduciary duties as an officer and director of ARRK by "diverting, misusing, and misappropriating [ARRK's] funds or opportunities." The Thompsons alleged a constructive trust arose in favor of ARRK as a result of

Schmitz's "diversion, misuse and misappropriation of funds and/or opportunities of ARRK." The Thompsons asserted Schmitz, as an officer and director of ARRK, breached his duty "owed the corporation and its shareholders ... to act in good faith and with the care an ordinarily prudent person in a like position would exercise under similar circumstances." The Thompsons alleged Nameniuk, as ARRK's accountant, had breached his duty "owed the corporation and all of its shareholders ... to exercise reasonable care and competence in preparing the accounting records, financial statements and tax returns of ARRK." The Thompsons also alleged Schmitz, as an officer and director of ARRK, breached his fiduciary duties "to act in good faith and in the best interests of ARRK" by "wrongfully divert[ing] funds and other assets of [ARRK] to himself and to the benefit of other third parties." The Thompsons contended Schmitz, RES, and Nameniuk were guilty of fraud in obtaining the $150,000. The Thompsons alleged Schmitz, through Ultimate Transportation, had "misappropriated a corporate opportunity" of Ultimate Rent All by "limit[ing] the amount of equipment and floor space available for use by Ultimate Rent All." The Thompsons claimed there was a "civil conspiracy" by Schmitz and Nameniuk to commit fraud against the Thompsons and ARRK. The Thompsons sought dissolution of ARRK because they were "deadlocked" with Schmitz over the management of ARRK and its assets were being "misapplied and wasted." The Thompsons also claimed they were entitled to punitive damages from Schmitz, Nameniuk, and RES.

[¶ 9] In their prayer for relief, the Thompsons requested:

1. That Judgment be entered in favor of ARRK Investments, Inc., Rodney Thompson, and Karen Thompson and

against defendants Ronald E. Schmitz and Ultimate Transportation and David T. Nameniuk, CPA, for *actual damages in an amount in excess of $50,000,* together with interest thereon as allowed by law;

2. That defendant Ronald E. Schmitz provide an accounting for all amounts wrongfully diverted from ARRK Investments, Inc. and/or the Thompsons;

3. That a receiver be appointed for the purpose of taking possession of the property of ARRK Investments, Inc., and to undertake on behalf of the corporation other such acts as the Court deems necessary and just;

4. That a Constructive Trust be imposed on any interest defendant Ronald E. Schmitz has in R.E.S. Investments, Inc.;

5. That the assets of ARRK Investments, Inc. be distributed and liquidated, and that defendant Ronald E. Schmitz be ordered to pay to ARRK Investments, Inc. the full amount of $150,000 owed to ARRK Investments, Inc. for his 500 shares of stock in ARRK Investments, Inc.;

6. That defendants be ordered to pay plaintiffs' attorneys fees, pursuant to Section 10–19.1–85.1 of the North Dakota Century Code or any other applicable statute;

7. That defendants be ordered to pay to plaintiffs punitive/exemplary damages, pursuant to North Dakota law; and

8. For such other relief as the Court deems just.

[¶ 10] In their answer, Schmitz, ARRK, and RES also sought dissolution of ARRK and liquidation of its assets. They denied the Thompsons' other allegations and asserted a cross-claim against Nameniuk for contribution or indemnity. Nameniuk denied liability and filed a cross-claim against Schmitz for breach of duty and misrepresentation, and sought contribution. Schmitz denied Nameniuk's allegations.

[¶ 11] Before trial, some of ARRK's assets were sold by agreement between the parties and the district court issued orders authorizing various payments to be made from ARRK's bank account. In the meantime, the Secretary of State informed ARRK that the corporation was "involuntarily dissolved" as of August 6, 2007, for failing to file an annual report which was due on August 1, 2006. The court granted partial summary judgment dismissing the Thompsons' claim that they had loaned Schmitz $150,000 and he had failed to repay them. The court also bifurcated for a jury trial the Thompsons' civil conspiracy claim.

[¶ 12] The remaining claims were tried to the district court without a jury in 11 days during November and December 2007. The court found "the Thompsons and the Schmitz[es] had an implied in fact contract for the purchase by Thompsons of one-half of the future stream of income of trailer rentals owned by Schmitz and [RES]." The court determined Schmitz and RES converted one-half of the stream of income from the trailer rental and the value of the one-half of the stream of income was $150,000, which was "the value that the parties themselves placed on the future indefinite stream of income in 2001," and which "was never an asset of ARRK." In the alternative, the court ruled even if an implied in fact contract did not exist, "[e]quity [in the form of unjust enrichment] would require that Schmitz and [RES] pay to Thompson $150,000 for usurping the stream of income in August 2005 as there was no justification for him to do so."

[¶ 13] The district court further ruled that Schmitz breached his fiduciary duties as a director and officer of ARRK under N.D.C.C. §§ 10–19.1–50(1) and (5) and 10–19.1–60 "by concocting the scheme to avoid paying his own personal income taxes and relaying that information to Nameniuk." According to the court, this resulted in the corporation filing "inaccurate tax returns since its inception which will need to be amended." The court found Nameniuk was negligent because he "should have been aware that the books and records of ARRK were incorrect," but the "only resulting damages to Thompson or ARRK . . . is the need to amend tax returns because of the misstatements on ARRK's corporate returns." The court found Schmitz had not defrauded the Thompsons because Thompson "knew exactly what ARRK was starting with as far as assets and never relied on the financial statements or on any representations that $100,000 of equipment and inventory had been transferred into ARRK." Having found no fraud, the court concluded punitive damages could not be awarded under N.D.C.C. § 32–03.2–11.

[¶ 14] The court ruled that the "distribution of proceeds received from the liquidation of assets that ARRK owned other than the stream of income should be completed," and the Thompsons and Schmitz were each entitled to $43,655.37 from those assets. The court found Schmitz was liable under N.D.C.C. § 10–19.1–85.1 for ARRK's attorney fees incurred in "having to pay to amend its inaccurate tax returns since 2001." The court ruled Schmitz was liable under N.D.C.C. § 28–26–31 to the Thompsons for attorney fees and costs incurred to prove that Schmitz had misrepresented what he had initially put into the corporation. The court found "[b]oth the fault of Schmitz and the negligence of Nameniuk contributed to the damages of ARRK and Thompsons in having to amend

their tax returns and for the interest Thompsons will have to pay on their past due taxes," and concluded under N.D.C.C. § 32–03.2–02, Schmitz was 80 percent responsible and Nameniuk was 20 percent responsible for those damages. The court also found "[t]he issues addressed in this opinion were fully presented to the Court, and to the extent necessary, any pleadings are amended [under N.D.R.Civ.P. 15(b)] to conform to the evidence presented."

[¶ 15] The second amended judgment in this case provides:

1. Plaintiffs Rodney Thompson and Karen Thompson, individually, have and are hereby awarded a money judgment against defendants Ronald E. Schmitz and R.E.S. Investments, Inc., jointly and severally, for the sum of $150,000.00 plus interest . . . for a total of $174,328.96 (principal plus interest) as of the date of entry of Judgment on April 28, 2008. . . .

2. Plaintiff ARRK Investments, Inc., is hereby awarded a money judgment against defendant Ronald E. Schmitz for the sum of $1,000.00, for damages for the cost of amending tax returns.

3. Plaintiff ARRK Investments, Inc., is hereby awarded a money judgment against defendant David T. Nameniuk, CPA, for the sum of $250.00, for damages for the cost of amending tax returns.

4. Plaintiffs Rodney Thompson and Karen Thompson, individually, have and are hereby awarded an additional money judgment against defendant Ronald E. Schmitz for the sum of $2,680.00 for damages relating to their tax returns and past due interest. In addition, plaintiffs Rodney Thompson and Karen Thompson, individually, have and are hereby awarded an additional money judgment against defendant Ronald E.

Schmitz for the sum of $96,173.00 for reasonable attorney fees.

5. Plaintiffs Rodney Thompson and Karen Thompson, individually, have and are hereby awarded a money judgment against defendant David T. Nameniuk, CPA, for the sum of $670.00 for damages relating to their tax returns and past due interest.

6. Plaintiffs Rodney Thompson and Karen Thompson, individually, will receive all sums currently held on deposit by plaintiff ARRK Investments, Inc. When plaintiffs Rodney Thompson and Karen Thompson receive these sums, they will partially satisfy $43,655.57 of the judgment they have against defendants Ronald E. Schmitz and R.E.S. Investments, Inc.

7. Costs and disbursements are taxed and allowed in favor of plaintiffs Rodney Thompson and Karen Thompson, individually, in the total amount of $53,978.59 (consisting of costs of $11,071.09 and expert fees of $42,907.50), with this total of $53,978.59 taxed as follows:

a. 20%, or $10,795.72 is taxed against defendant David T. Nameniuk; and

b. The remaining 80%, or $43,182.87, is taxed against defendants Ronald E. Schmitz and R.E.S. Investments, Inc., jointly and severally.

[¶ 16] Schmitz, ARRK, and RES appealed, and the Thompsons cross-appealed. Nameniuk did not appeal.

II

[¶ 17] On appeal, Schmitz, ARRK, and RES contend the district court erred in determining that upon ARRK's dissolution, a $300,000 stream of income existed for the future use of $70,000 worth of RES's trailers; in granting the Thompsons equitable relief through unjust enrichment; and in awarding the Thompsons attorney fees.

The Thompsons assert the district court erred in failing to make findings under N.D.C.C. § 10–19.1–115(1)(b) as required by this Court's decision in *Kortum v. Johnson*, 2008 ND 154, 755 N.W.2d 432, and in failing to grant them shareholder relief under N.D.C.C. § 10–19.1–115; in failing to grant the Thompsons' motions to amend the findings and judgment and award them attorney fees under N.D.C.C. § 10–19.1–115(6); and in considering the Thompsons' request for an award of nontaxable expenses under N.D.C.C. § 28–26–06 rather than under N.D.C.C. § 10–19.1–85.1 as an expense of litigation.

[¶ 18] The myriad issues raised on appeal stem in large part from the district court's deviation from the parties' pleadings. This case was pled by the Thompsons primarily as a shareholder derivative action under N.D.C.C. §§ 10–19.1–85.1 and 10–19.1–86. The Thompsons took the position during trial that the $150,000 they borrowed and gave to Schmitz was a capital contribution to ARRK. Schmitz took the position he contributed the use of RES's assets in the form of trailers, equipment, and personnel to ARRK. The court, however, found the $150,000 "was never an asset of ARRK," and determined the Thompsons and Schmitz "had an implied in fact contract for the purchase by Thompsons of one-half of the future stream of income of trailer rentals owned by Schmitz and [RES]." The court further determined the use of Schmitz and RES's trailers, equipment, and personnel never became an asset of ARRK, because the court found "[w]hen [ARRK] started, its only asset was the 'stream of income' from rented trailers owned by [RES]."

[¶ 19] Although the district court's finding of an implied in fact contract has no basis in the parties' pleadings, the court amended the pleadings under

N.D.R.Civ.P. 15(b) "to conform to the evidence presented." Generally, whether an issue was tried by the express or implied consent of the parties is a matter within the sound discretion of the district court and will not be reversed on appeal unless an abuse of discretion is shown. *Mann v. Zabolotny*, 2000 ND 160, ¶ 11, 615 N.W.2d 526. A district court abuses its discretion if it acts in an arbitrary, capricious, or unreasonable manner, or if it misinterprets or misapplies the law. *Gustafson v. Poitra*, 2008 ND 159, ¶ 20, 755 N.W.2d 479.

■ [¶ 20] Although a pleading may be impliedly amended under N.D.R.Civ.P. 15(b) by the introduction of evidence which varies the theory of the case and which is not objected to on the grounds it is not within the issues in the pleadings, consent to try an issue outside the pleadings cannot be implied from evidence which is relevant to the pleadings but which also bears on an unpleaded issue. *Ruud v. Frandson*, 2005 ND 174, ¶ 10, 704 N.W.2d 852; *Mann*, 2000 ND 160, ¶ 12, 615 N.W.2d 526; *Fleck v. Jacques Seed Co.*, 445 N.W.2d 649, 652 (N.D.1989). Here, any evidence concerning an implied in fact contract was also relevant to the issue whether the $150,000 was a capital contribution to ARRK. Therefore, we cannot conclude the Thompsons impliedly consented to trial of the theory of an implied in fact contract. *See Ruud*, at ¶ 12. We conclude the district court abused its discretion in amending the pleadings.

[¶ 21] The district court attempted to justify its alternative conclusion that unjust enrichment led to the same result the court reached on the theory of an implied in fact contract by relying on *Estate of Hill*, 492 N.W.2d 288 (N.D.1992). In *Hill*, this Court concluded that when the district court finds no express contract exists between the parties, the court should consider possible recovery under the theory of a contract implied at law so an equitable remedy can be applied. *Id.* at 294–95. *Hill* is distinguishable because an express contract was pled in that case. *Id.* at 292. No express contract was pled in this case, and we have concluded the district court abused its discretion in amending the pleadings to include a claim based on an implied in fact contract.

■ [¶ 22] Two facts are relatively clear in this case. The Thompsons paid Schmitz $150,000 to buy into a business with Schmitz. According to Schmitz, his contribution to the business was "unlimited use of trailers and the [RES] building, the employees, the heat, the electricity, the equipment, the forklifts, ... showroom space. Anything and everything you would need to operate a business is what I was giving up for that." Indeed, Schmitz represented in corporate records that he had in fact contributed $100,000 in trailers and equipment to ARRK. The Thompsons and Schmitzes went through the formality of forming a corporation, but corporate formalities were ignored after ARRK's formation. Although the district court found the capital contributions of the parties to ARRK contained in the corporate records were "total fiction," a corporation is itself a "fiction" under the law, *Airvator, Inc. v. Turtle Mountain Mfg. Co.*, 329 N.W.2d 596, 602 (N.D.1983), and under some circumstances, a shareholder's transaction with a corporation, which is not in fact a capital contribution, may nevertheless be treated as a capital contribution. *Hanewald v. Bryan's Inc.*, 429 N.W.2d 414, 417 n. 3 (N.D.1988). In the somewhat analogous context of shareholder loans to corporations, a "shareholder's loan to the corporation may, after a consideration of all the facts and circumstances, be treated as a contribution of capital." *Schaub v. Kortgard*, 372 N.W.2d 427, 430 (Minn.Ct.App. 1985); *see also Anjoorian v. Kilberg*, 836

A.2d 1092, 1096 (R.I.2003); 12B. William Meade Fletcher, *Fletcher Cyclopedia of the Law of Private Corporations* § 5739 (Rev.Vol.2009). The court said in *Yankee Microwave, Inc. v. Petricca Commc'n Sys., Inc.,* 53 Mass.App.Ct. 497, 760 N.E.2d 739, 759 (2002) (internal quotes and citation omitted): "Whether an advance should be treated as a capital contribution ... depends to some extent on the objective intention of the contributor, and in part on whether, in particular circumstances, equitable considerations require treatment of the advance as a capital contribution." *See also* 18 C.J.S. *Corporations* § 179 (2007). This Court has also embraced the concept that "equity regards as done that which ought to have been done." *Johnson v. Johnson,* 2000 ND 170, ¶ 9, 617 N.W.2d 97; *see also* N.D.C.C. § 31–11–05(20) ("That which ought to have been done is to be regarded as done in favor of one to whom and against one from whom performance is due.").

■ [¶ 23] The Thompsons clearly intended the $150,000 they paid to Schmitz to be a contribution to ARRK, just as Schmitz clearly intended the use of RES's trailers, equipment, and employees to be a contribution to ARRK. Although Schmitz's contribution is an intangible asset, intangible assets can have value, *see, e.g., Graves v. Graves,* 340 N.W.2d 903, 906 (N.D.1983); *In re Marriage of Keener,* 728 N.W.2d 188, 195 (Iowa 2007), and the evidence suggests the use of the trailers, equipment, and employees was of substantial value to ARRK. We conclude equitable considerations require that the $150,000 paid by the Thompsons, and the value of the use of RES's trailers, equipment, and employees not less than the $100,000 represented by Schmitz in the corporate records, should be treated as assets available to ARRK in the dissolution proceedings. Corporate assets belong to the corporation, not to the shareholders. *See, e.g., Dole Food Co. v. Patrickson,* 538 U.S. 468, 475, 123 S.Ct. 1655, 155 L.Ed.2d 643 (2003); *Blohm v. Kelly,* 765 N.W.2d 147, 153 (Minn.Ct.App. 2009); *Penn Nat'l Gaming, Inc. v. Ratliff,* 954 So.2d 427, 431 (Miss.2007). Schmitz must return these assets to ARRK.

[¶ 24] The district court erred in treating the Thompsons and Schmitz's respective contributions to ARRK as non-corporate property. The case should be tried as a shareholder derivative action under the provisions of the Business Corporation Act, N.D.C.C. ch. 10–19.1, as pled by the Thompsons. We remand to the district court for the preparation of findings and conclusions on the issues raised in the pleadings. The court may open the record to take additional evidence if deemed necessary.

### III

[¶ 25] Because Nameniuk did not appeal, we affirm the judgment as it relates to him. The judgment is otherwise reversed and the case is remanded for further proceedings.

[¶ 26] GERALD W. VANDE WALLE, C.J., BURT L. RISKEDAHL, S.J., CAROL RONNING KAPSNER, and DALE V. SANDSTROM, JJ., concur.

[¶ 27] The Honorable BURT L. RISKEDAHL, S.J., sitting in place of CROTHERS, J., disqualified.