2015 ND 204

**Larry MOODY and Janice Moody,
Plaintiffs and Appellees**

v.

**Dale SUNDLEY, Defendant
and Appellant.**

**No. 20140408.**

Supreme Court of North Dakota.

Aug. 24, 2015.

Jordon J. Evert (argued) and Peter H. Furuseth (on brief), Williston, N.D., for plaintiffs and appellees.

Lisa M. Dynneson (argued) and Garth H. Sjue (appeared), Williston, N.D., for defendant and appellant.

McEVERS, Justice.

[¶ 1] Dale Sundley appeals from a judgment quieting title to certain real property in favor of Larry and Janice Moody and dismissing Sundley's adverse possession counterclaim. Sundley argues the district court erred in finding he did not acquire ownership of the disputed property by adverse possession and failing to find the boundary of his property was established by acquiescence. We affirm.

I

[¶ 2] Sundley and the Moodys own adjacent real property in Burke County in the southeast quarter of the southwest quarter of section 23, township 159 north, range 94 west, north of a railroad right-of-way. The parties dispute the ownership of a portion of the east 540 feet of the southeast quarter of the southwest quarter of section 23, located west of a fence on land owned by the Moodys.

[¶ 3] In 1948, Nuell Herseth acquired by quit claim deed the southeast quarter of the southwest quarter of section 23, township 159 north, range 94 west, which includes the properties currently owned by Sundley and the Moodys. A building is located on Sundley's property that was previously used as a school and later as a township community center. It is not clear from the record how, but the Powers Lake Public School District acquired the property from Herseth. Evidence shows the School District conveyed the property to Battleview Township by warranty deed in 1974. The 1974 warranty deed described the property as, "A portion of *of* [sic] the SE1/4SW1/4 of Section 23, Township 159 North, Range 94 West, commonly called and known as the Battleview School

and School Grounds[.]" The deed further provided, "this conveyance is made subject to the existing agreement between the School District and NUELL HERSETH, from whom the property was acquired." In 1986, Nuell Herseth conveyed the property to Battleview Township by quit claim deed. The deed described the property as, "All that portion of the SE1/4SW1/4 of Section 23, Township 159 North, Range 94 West, lying north of the Burlington Northern Railroad's right-of-way . . . except the east 540 feet thereof, according to the attached map. (1.5 acres more or less)"

[¶ 4] In 2001, Sundley acquired property by quit claim deed from Battleview Township. The deed described the property as, "All that portion of the SE1/4SW1/4 of Section 23, Township 159 North, Range 94 West, lying north of the Burlington Northern Railroad's right-of-way . . . except the east 540 feet thereof, according to the attached map. (1.5 acres more or less)"

[¶ 5] In 1989, Herseth conveyed the east 540 feet of the southeast quarter of the southwest quarter of section 23 to Daniel Schroeder by quit claim deed. In 2005, the Estate of Daniel Schroeder conveyed the property by personal representative's deed of distribution to Eugene Schroeder, Daniel Schroeder's father. In 2006, Eugene Schroeder conveyed the property to the Moodys by warranty deed, which described the property as:

*TOWNSHIP 159 NORTH, RANGE 94 WEST*
SECTION 23: The East 540 feet of the SE1/4SW1/4 lying North of the Burilington [sic] Northern Railway

[¶ 6] In June 2012, the Moodys sued Sundley, alleging Sundley was trespassing on their property. The Moodys claimed Sundley placed two modular homes, sheds, and a septic tank on their property and refused to remove the items. They re-quested the district court order Sundley to remove his property and to award damages. Sundley answered and counterclaimed for adverse possession, claiming his predecessors-in-interest adversely possessed the disputed property for more than twenty years and the disputed property was part of the property he purchased from Battleview Township.

[¶ 7] A bench trial was held, and the parties submitted post-trial briefs. Sundley argued a governmental entity can adversely possess real property in the same manner as a private party, the School District possessed the disputed property from 1951 until 1974 and acquired the property by adverse possession under N.D.C.C. 28–01–10 and 28–01–11, and the School District conveyed its interest in "the Battleview School and School Grounds" to Battleview Township by the 1974 recorded warranty deed. He alternatively argued Battleview Township acquired ownership of the disputed property under N.D.C.C. 28–01–08 and 28–01–09, the township had a deed for "the Battleview School and School Grounds," the disputed property is part of the school grounds, the township possessed the disputed property from 1974 until 2001, and therefore the township acquired ownership of the disputed property. Sundley also argued the township acquired the property by adverse possession under N.D.C.C. 28–01–10 and 28–01–11, or the township acquired ownership of the property by adverse possession under N.D.C.C. 47–06–03.

[¶ 8] The district court quieted title to the disputed property in favor of the Moodys and dismissed Sundley's counterclaim. The court found the Moodys are the legal owners of the disputed property and Sundley failed to meet his burden of proving the elements of adverse possession.

## II

[¶ 9]   In an appeal from a bench trial, the trial court's findings of fact are reviewed under the clearly erroneous standard of review and its conclusions of law are fully reviewable. *Savre v. Santoyo*, 2015 ND 170, ¶ 8, 865 N.W.2d 419. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. *Id.* " 'In a bench trial, the trial court is the determiner of credibility issues and we do not second-guess the trial court on its credibility determinations.' " *Id.* (quoting *Brash v. Gulleson*, 2013 ND 156, ¶ 7, 835 N.W.2d 798).

## III

[¶ 10]   Sundley argues the district court erred by failing to conclude that he owns the disputed property through adverse possession.

[¶ 11]   Whether there has been an adverse possession is a question of fact, which will not be reversed on appeal unless it is clearly erroneous. *Gruebele v. Geringer*, 2002 ND 38, ¶ 6, 640 N.W.2d 454. "To satisfy the elements for adverse possession, the acts on which the claimant relies must be actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." *Id.* at ¶ 7. All of the elements must be satisfied, and if any elements are not satisfied the possession will not confer title. *Id.* "The burden is on the person claiming property by adverse possession to prove the claim by clear and convincing evidence, and every reasonable intendment will be made in favor of the true owner." *Id.* at ¶ 8.

[¶ 12]   The district court found the Moodys are the legal owners of the disputed property and Sundley failed to establish that he or any of his predecessors-in-interest satisfied all of the elements of adverse possession:

It was clear from the testimony of the witnesses that, prior to the surveys, no one knew for sure who owned the disputed property.   When Larry Moody was asked if he assumed he owned the property, he testified, "Not really."   He testified that Sundley never said anything about owning the property either. Janice Moody testified that Larry and Eugene [Schroeder] had an idea, but were not sure of the western boundary line of the Moody's property.   Janice testified that they had the property surveyed, because they had their house for sale and wanted to be able to tell the next owner where the property line was. Janice also testified that after "all this came up," she talked to Alan Erickson and Leanne Updahl, members of the Battleview Township Board at the time, and they told her the disputed property was part of the Moody's property. Sundley testified he was not aware of the property line when he bought the property, but thought the disputed property was part of the school grounds.

Sundley argued in closing that Nuell Herseth had no interest to convey when he executed Quit Claim Deeds to Battleview Township in 1986 and to Daniel Schroeder in 1989, because the property had already been conveyed to Battleview Township in 1974 by Warranty Deed from the Powers Lake Public School District.   The Warranty Deed conveyed "a *portion* of of (sic) the SE1/4SW1/4 of Section 23 ... commonly called and known as the Battleview School and School Grounds."   ... There was no evidence presented about what portion of the property was "commonly called

and known as the Battleview School and School Grounds."

In addition, the 1974 Warranty Deed states, in part, ".... this conveyance is made subject to the existing agreement between the School District and HUELL [sic] HERSETH, from whom the property was acquired." There was no evidence of the agreement that existed between the School District and Nuell Herseth or how such an agreement might have limited the conveyance.

At trial, the fencing, the mowing, and the playground equipment were testimonial areas of focus, presumably elicited to establish the actual, visible, continuous, notorious, distinct, hostile, and exclusive elements of adverse possession.

Eugene Schroeder testified that his son Daniel Schroeder constructed a fence in 1989 to enclose a pasture for his sheep and later cattle. It was agreed by several witnesses that the fence started at a post in the road at the entrance to the Moody's property and went north along the now-existing tree row on the Moody's property. Janice Moody testified that the fence was removed by Eugene Schroeder after the property was sold to the Moodys. Sundley testified the Moody's property line was roughly where the tree line is now.

Eugene testified that Daniel occasionally hayed around the school house. Sundley testified that Daniel mowed around the school and in the ditches in front of the school and that when he (Sundley) started mowing the area, Daniel quit.

The Court is unpersuaded that the fence erected by Daniel Schroeder and/or the mowing of the disputed property are enough to satisfy the actual, visible, continuous, notorious, distinct and hostile elements of adverse possession.

That leaves the playground equipment as the only other manifestation of possession developed at trial.

Several witnesses remembered seeing playground equipment behind the school, but there was no evidence about when the equipment was installed. Larry Moody testified that the playground equipment was not out as far as the disputed area. Terry Anderson testified he could not remember exactly where the equipment was located. Eugene Schroeder testified there was a swing set east of the [school building]. Referring to Defendant's Exhibit 5, Sundley testified that the playground was located northeast of the trailers and then agreed that it was located roughly where the trailers were on Exhibit 5. Sundley testified he remembered playing on the playground in 1967.

We know from the evidence that the school opened in 1952. We do not know when the playground equipment was installed, but evidence was presented that the equipment existed in 1967 and remained in place until 2001.

While that evidence may satisfy the 20–year requirement for adverse possession, Sundley still had the burden at trial of establishing the other elements of adverse possession, i.e., the actual, visible, continuous, notorious, distinct, hostile, and exclusive elements.

The evidence on the location of the playground equipment varied from Larry's testimony that the equipment was not out as far as the disputed property to Sundley's testimony that it was northeast of the mobile homes he placed on the disputed property. The evidence would indicate that if the playground equipment was indeed on the disputed property, it occupied only a portion of the disputed property. There was no testimony, or even argument, that Sund-

ley's predecessors-in-interest adversely possessed the property by acquiescence.

In addition, there is evidence that Daniel Schroeder and/or Eugene Schroeder, the Moody's predecessors-in-interest, and then the Moodys paid the property taxes on the disputed property at least as far back as 1997.

After consideration of all of the evidence, the Court finds that Sundley has not met his burden of establishing all of the elements of adverse possession by clear and convincing evidence.

[¶ 13] Sundley argues the district court erred by failing to consider all of his legal theories for his ownership of the property by adverse possession. He claims his predecessors-in-interest acquired the property through adverse possession under N.D.C.C. 28–01–08, 28–01–10, or 47–06–03, and it was error for the district court not to consider and analyze his argument under each of these statutory provisions. He contends substantial evidence shows he and his predecessors-in-interest continuously possessed, occupied, and used the disputed property.

[¶ 14] Ownership of property may be acquired by adverse possession under N.D.C.C. 28–01–08, if the claim is based upon a written instrument and there has been a continued occupation and possession of the premises for twenty years. To acquire ownership of property by adverse possession under N.D.C.C. 47–06–03 the claimant must have possession under color of title, pay all taxes and assessments on the property, and have actual open adverse and undisputed possession of the property for ten years. When a claim is not based upon a written instrument, ownership may be acquired by adverse possession under N.D.C.C. 28–01–10 if there has been an actual continued occupation of the premises exclusive of any other right for a period of twenty years.

[¶ 15] For possession of property to be "adverse," the acts the claimant relies upon must be actual, visible, continuous, notorious, distinct, hostile, and of such character as to unmistakably indicate an assertion of claim of exclusive ownership by the occupant. *See, e.g., Gruebele,* 2002 ND 38, ¶ 7, 640 N.W.2d 454; *Torgerson v. Rose,* 339 N.W.2d 79, 84 (N.D.1983). To acquire ownership of property by adverse possession under N.D.C.C. 28–01–08, 28–01–10, or 47–06–03, the claimant must prove all of the elements of adverse possession. *See Benson v. Taralseth,* 382 N.W.2d 649, 652–53 (N.D.1986) (applying the elements of adverse possession for a claim under N.D.C.C. 47–06–03); *Torgerson,* at 83–84 (applying elements of adverse possession for claim under N.D.C.C. 28–01–08); *Simons v. Tancre,* 321 N.W.2d 495, 498–99 (N.D.1982) (holding a claimant must establish all of the elements of an adverse possession claim even if the statutory requirements of N.D.C.C. 28–01–08 are met); *Martin v. Rippel,* 152 N.W.2d 332, 338 (N.D.1967) (applying elements of adverse possession for claim under N.D.C.C. 28–01–10).

[¶ 16] In proving all the elements of adverse possession, the claimant must prove actual possession of the property. *See Grandin v. Gardiner,* 63 N.W.2d 128, 133 (N.D.1954). The district court found Sundley failed to establish his predecessors-in-interest actually possessed the disputed property. The evidence related to the playground equipment and use of the property for parking was the only evidence Sundley's predecessors-in-interest may have possessed the disputed property. The district court found the playground equipment was installed before 1967 and remained in place until 2001, there was conflicting evidence about where the playground equipment was located, and the evidence indicated the equipment only oc-

cupied a portion of the property if it was even located on the disputed property.

[¶ 17] Larry Moody testified the playground equipment was not located on the disputed property. Sundley testified he started mowing the disputed property sometime after he purchased the school property in 2001, he took out the playground equipment, put gravel in behind the building to allow parking, and added a gravel approach across the disputed property to the building. Sundley testified the playground equipment was located on the disputed property in the area where he placed the two trailers. He testified people occasionally parked behind the school building and drove on the area where he put in the approach before he owned the property. Louise Rystedt testified she was the Battleview postmaster from 1944 until 1984, her three children attended the school, no improvements were made to the property after the school was built in the early 1950s, and the back side of the school and the disputed property was never used for parking. Terry Andersen testified that he worked on the improvements Sundley made to the school building; he helped tear out the playground equipment, but he did not remember where it was located; he built the approach in the back of the school; and, there was not a road where they put the approach but there were wheel tracks because people would drive up the ditch and there were paths "every which way."

[¶ 18] The district court found there was conflicting evidence about the location of the playground equipment and Sundley failed to establish his predecessors-in-interest had actual possession of the disputed property. Sundley does not claim his actions were sufficient to satisfy the elements for adverse possession. When evidence conflicts, we do not second-guess the court's credibility determinations or reweigh evidence on appeal. *See Service Oil, Inc. v. Gjestvang*, 2015 ND 77, ¶¶ 12–13, 861 N.W.2d 490. The evidence supports the court's findings, and the findings are not clearly erroneous. Sundley failed to establish that he, or his predecessors-in-interest, had actual, visible, and continuous possession of the disputed property for the required period of time.

[¶ 19] The evidence did not establish Sundley's predecessors-in-interest exclusively possessed the property or that their possession was hostile. "To be effective as a means of acquiring title, an adverse claimant's exclusive possession must be such as to operate as an ouster or disseisin of the owner of legal title, and the owner must be wholly excluded from possession by the claimant." *Gruebele*, 2002 ND 38, ¶ 10, 640 N.W.2d 454. "Exclusive possession, for purposes of establishing title through adverse possession, requires the exclusion of the record owner and third parties as well." *Id.* at ¶ 11.

[¶ 20] Sundley did not present any evidence that his predecessors-in-interest excluded the Moodys' predecessors-in-interest from the disputed property or that their possession was hostile. The court found Daniel Schroeder mowed the disputed property until Sundley purchased his property. Eugene Schroeder testified his son, Daniel Schroeder, put up a fence on the Moodys' property for a sheep pasture and would hay the grass on the disputed property for use with the sheep. The court found the 1974 warranty deed, in which the School District conveyed property to Battleview Township, indicated there was an agreement between the School District and Herseth and the conveyance was subject to this agreement, but there was no other evidence about the agreement or how it limited the conveyance. Sundley argues the evidence of the existence of an agreement indicates Herseth gave the

School District some of the property on the east 540 feet. However, there was no evidence of the terms or nature of the agreement. The evidence presented showed that Herseth conveyed the entire east 540 feet to Daniel Schroeder in 1989 without any exceptions. Sundley failed to establish any possession of the disputed property by his predecessors-in-interest was hostile and exclusive.

[¶ 21] Sundley failed to meet his burden to prove adverse possession by clear and convincing evidence. Although the district court did not explain its analysis for denying Sundley's adverse possession claim under each of his legal theories, the court found Sundley failed to establish all the elements of adverse possession and the evidence supports the court's findings. The elements must be satisfied under any of Sundley's legal theories and, therefore, it was unnecessary for the district court to specifically address Sundley's arguments about adverse possession under each statutory provision. We conclude the district court did not err in denying Sundley's adverse possession claim.

## IV

[¶ 22] Sundley argues the district court erred in failing to consider and to conclude the boundary line between the two properties was established by the acquiescence of the Moodys and their predecessors-in-interest. He claims a physical berm has separated the two properties since the 1950s, Daniel Schroeder built a fence on top of the berm in 1989, and no one ever told him or his predecessors that the fence and berm were not the boundary line.

[¶ 23] The doctrine of acquiescence is separate from adverse possession and may apply when all of the elements of adverse possession cannot be met. *See James v. Griffin*, 2001 ND 90,

¶ 10, 626 N.W.2d 704. "The doctrine of acquiescence allows a person to acquire property when occupying part of a neighbor's land due to an honest mistake about the location of the true boundary, because the adverse intent requirement of the related doctrine of adverse possession could not be met." *Fischer v. Berger*, 2006 ND 48, ¶ 12, 710 N.W.2d 886. "To establish a new boundary line by the doctrine of acquiescence, it must be shown by clear and convincing evidence that both parties recognized the line as a boundary, and not a mere barrier, for at least 20 years prior to the litigation." *Brown v. Brodell*, 2008 ND 183, ¶ 9, 756 N.W.2d 779. Mutual recognition of the boundary may be inferred by a party's conduct or silence. *Id.* The determination whether there has been mutual recognition of a boundary is a question of fact, which we review under the clearly erroneous standard on appeal. *Id.* at ¶ 10.

[¶ 24] The district court found "[t]here was no testimony, or even argument, that Sundley's predecessors-in-interest adversely possessed the property by acquiescence."

[¶ 25] Sundley did not include a claim for acquiescence in the pleadings and did not move to amend the pleadings. An issue that was not raised before the district court cannot be raised for the first time on appeal, and the issue must be raised in the district court so the court can rule on it for an effective appeal. *Ruud v. Frandson*, 2005 ND 174, ¶ 10, 704 N.W.2d 852. "When an issue not raised by the pleadings is tried by the parties' express or implied consent, it must be treated in all respects as if raised in the pleadings." N.D.R.Civ.P. 15(b). " 'Under N.D.R.Civ.P. 15(b), a pleading may be impliedly amended by the introduction of evidence which varies the theory of the case and which is not objected to on the grounds it is not

within the issues in the pleadings.'" *Ruud,* at ¶ 10 (quoting *Lochthowe v. C.F. Peterson Estate,* 2005 ND 40, ¶ 8, 692 N.W.2d 120); *see also SolarBee, Inc. v. Walker,* 2013 ND 110, ¶ 13, 833 N.W.2d 422 (stating amendment by implication is limited to situations where the novelty of the unpleaded issue is reasonably apparent and the intent to try the issue is clearly indicated by failure to object). Pleadings may be amended by implication only when the evidence introduced is not relevant to any issue pleaded in the case. *Ruud,* at ¶ 10. "[C]onsent to try an issue outside the pleadings cannot be implied from evidence which is relevant to the pleadings but which also bears on an unpleaded issue." *Thompson v. Schmitz,* 2009 ND 183, ¶ 20, 774 N.W.2d 263; *see also SolarBee,* at ¶ 12.

[¶ 26] "'[W]hether the issue was tried by express or implied consent is a matter within the sound discretion of the trial court and will not be reversed on appeal unless an abuse of discretion is shown.'" *Mertz v. Mertz,* 2015 ND 13, ¶ 6, 858 N.W.2d 292 (quoting *Napoleon Livestock Auction, Inc. v. Rohrich,* 406 N.W.2d 346, 357 (N.D.1987)). A court abuses its discretion when it acts in an arbitrary, unreasonable, or unconscionable manner, or if it misinterprets or misapplies the law. *Thompson,* 2009 ND 183, ¶ 19, 774 N.W.2d 263.

[¶ 27] Sundley did not include a claim for acquiescence in his pleadings. Any evidence concerning acquiescence was also relevant to Sundley's adverse possession claims. Evidence of the berm and the fence were used to explain the boundaries of the disputed property and were relevant to Sundley's adverse possession claims. The district court concluded "[t]here was no testimony, or even argument, that Sundley's predecessors-in-interest adversely possessed the property by acquies-

cence." The district court did not act in an arbitrary or unreasonable manner. We conclude the court did not abuse its discretion by failing to determine the issue was tried by implied consent and failing to decide whether the boundary line between the two properties was established by acquiescence.

## V

[¶ 28] The Moodys argue Sundley's appeal is frivolous under N.D.R.App.P. 38, and request this Court award them attorney's fees.

[¶ 29] If an appeal is frivolous, this Court may award damages and costs, including attorney's fees. N.D.R.App.P. 38. "'An appeal is frivolous if it is flagrantly groundless, devoid of merit, or demonstrates persistence in the course of litigation which evidences bad faith.'" *Viscito v. Christianson,* 2015 ND 97, ¶ 33, 862 N.W.2d 777 (quoting *In re Hirsch,* 2014 ND 135, ¶ 14, 848 N.W.2d 719). We conclude Sundley's appeal is not frivolous, and we decline to award the Moodys attorney's fees.

## VI

[¶ 30] We affirm the judgment.

[¶ 31] GERALD W. VANDE WALLE, C.J., CAROL RONNING KAPSNER, DANIEL J. CROTHERS and DALE V. SANDSTROM, JJ., concur.