# IN THE SUPREME COURT
## STATE OF NORTH DAKOTA

### 2024 ND 129

| | |
|---|---|
| Myron Hovet and Marcia Hovet, | Plaintiffs and Appellees |
| v. | |
| Nevin Dahl and Laura Dahl, | Defendants and Appellants |
| and | |
| All other persons unknown claiming any estate or interest in, or lien or encumbrance upon, the property described in the complaint, | Defendants |

### No. 20230322

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Daniel S. El-Dweek, Judge.

REVERSED AND REMANDED WITH INSTRUCTIONS.

Opinion of the Court by Tufte, Justice.

Aaron J. Weber, Watford City, N.D., for plaintiffs and appellees.

Derrick L. Braaten (argued), Bismarck, N.D., Brittany L. Hatting (appeared) and Will R. Budke (appeared), Wahpeton, N.D., for defendants and appellants.

**Tufte, Justice.**

[¶1]    Nevin Dahl and Laura Dahl appeal from a district court order and judgment which quieted title to surface rights of disputed lands in Myron Hovet and Marcia Hovet. On appeal, the Dahls argue the district court erred in finding that the Hovets established title by adverse possession and the doctrine of acquiescence. We reverse the district court's order and judgment and remand for the district court to quiet title by adverse possession to the driveway and cultivated land around the trees in the Hovets, and to quiet title in the remainder of the disputed land in the Dahls.

I

[¶2]    The Hovets brought claims for adverse possession and boundary by acquiescence against the Dahls. The property in dispute is a 0.24 acre tract adjacent to the Hovets' residential yard and separated from other Dahl land by McKenzie County Road 34.

[¶3]    When the Hovets moved onto the property in 1979, County Road 34 and their driveway were in the same place as they presently sit, and a tree row bordered the disputed lands. Within a year, they modified the ditches in the disputed lands to make them easier to mow. In 1985, they planted a row of caragana along the existing tree rows, which encroached onto the eastern edge of the disputed lands. The Hovets' main activities on the disputed lands have been to maintain the driveway, mow the grass, and cultivate the soil around the tree rows. In 2012 or 2013, the Hovets added two stone markers north of the driveway. In 2019, Nevin Dahl stacked hay bales on the disputed lands and requested removal of the stone markers. The Hovets have not removed the stone markers. In 2020, the Hovets commenced this quiet title action.

[¶4]    After a bench trial, the district court determined the Hovets acquired the disputed lands by adverse possession and through the doctrine of acquiescence. The Dahls appeal.

II

[¶5]    This Court's standard of review for a bench trial is well-established:

> In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions

of law are fully reviewable. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made. The district court is the determiner of credibility issues in a bench trial, and we will not second-guess its credibility determinations.

*Kubik v. Hauck*, 2022 ND 217, ¶ 4, 982 N.W.2d 599 (cleaned up).

[¶6] Whether adverse possession has occurred is a question of fact, which is reviewed under the clearly erroneous standard. *Moody v. Sundley*, 2015 ND 204, ¶ 11, 868 N.W.2d 491. "To satisfy the elements for adverse possession, the acts on which the claimant relies must be actual, visible, continuous, notorious, distinct, and hostile, and of such character to unmistakably indicate an assertion of claim of exclusive ownership by the occupant." *Gruebele v. Geringer*, 2002 ND 38, ¶ 7, 640 N.W.2d 454.

[¶7] Section 28-01-07, N.D.C.C., establishes a presumption against the adverse possession of real property "unless it appears that such premises have been held and possessed adversely to such legal title for twenty years before the commencement of such action." When the claim of exclusive right is not founded upon a written instrument, "the premises actually occupied and no other must be deemed to have been held adversely." N.D.C.C. § 28-01-10.

[¶8] Section 28-01-11 limits the scope of adverse possession not based on a written instrument:

> For the purpose of constituting an adverse possession by a person claiming title not founded upon a written instrument nor upon a judgment or decree, land shall be deemed to have been possessed and occupied only in the following cases:
> 1. When it has been protected by a substantial enclosure; or
> 2. When it has been usually cultivated or improved.

A person claiming property by adverse possession bears the burden to prove the claim by clear and convincing evidence, and every reasonable inference will be made in favor of the true owner. *Moody*, 2015 ND 204, ¶ 11. "All of the elements must be satisfied, and if any elements are not satisfied the possession will not confer title." *Id*.

[¶9]   The Dahls argue the district court erred in finding the plaintiffs acquired title to the disputed lands by adverse possession because the Hovets' use of the land was not hostile to the title owner.

[¶10]  To establish hostility under adverse possession, "actual knowledge of the adverse possession is not necessary if there is a course of conduct directly hostile and these acts of hostility are 'unmistakably clear.'" *Benson v. Taralseth*, 382 N.W.2d 649, 653 (N.D. 1986). Acts that provide unmistakably clear hostility are protecting the land by substantial enclosure or usually cultivating or improving the land. N.D.C.C. § 28-01-11. Mowing grass is ordinary care, not a hostile use. *State Finance Co. v. Beck*, 109 N.W. 357, 358 (N.D. 1906); *see also Weinstein v. Hurlbert*, 2012 ME 84, ¶ 12, 45 A.3d 743 (holding the hostile element of adverse possession requires more than seasonal grass mowing); *First Congregational Church of Enosburg v. Manley*, 2008 VT 9, ¶¶ 15-16, 946 A.2d 830 (reasoning mowing grass cannot be the primary basis for adverse possession because "[s]uch harmless trespasses are committed upon the well-founded assumption that ordinarily a neighbor will acquiesce in and consent to them"); *Bywaters v. Gannon*, 686 S.W.2d 593, 595 (Tex. 1985) (explaining that such activities as mowing grass, planting flowers, and maintaining a hedge are not hostile activities on which one can establish adverse possession).

[¶11]  The district court found:  the Hovets made a one-time modification to the ditch when they first moved onto their property to make it easier to mow; the Hovets have a driveway on the disputed land which they maintain by removing snow, blading, adding road material, and applying a chip seal; the Hovets planted and maintained tree rows and caragana shrubs which border and encroach onto the eastern edge of the disputed lands. The Hovets cultivate or till the ground between the rows two or three times per year. The Hovets maintain the rest of the disputed land as an extension of their yard by mowing, spraying, and picking up trash.

[¶12]  Here much of the disputed land is grass, which only receives ordinary care from the Hovets, who mow and spray the area. While they have not sought permission to mow, these activities are ordinary care that do not show the Hovets possessed and cultivated or improved the land in ways that would be hostile to the Dahls' interest in the property. Section 28-01-10, N.D.C.C., limits the ability of an adverse possessor to claim land: "the premises actually occupied and no other must be deemed to have been held adversely."

The district court's findings about the use of the driveway and the cultivated area along the rows of trees and shrubs support its conclusion that those areas were adversely possessed. The Hovets' mowing and maintenance of the remainder of the disputed property was not unmistakably hostile to Dahls' interest and does not support a claim of title by adverse possession.

[¶13] The stone markers, which the Hovets placed in the disputed land, are improvements hostile to the Dahls, but the markers were placed less than ten years prior to this action. The statutory period to adversely possess the area occupied by the stone markers has not passed, and thus the Hovets' installation of the markers cannot be the basis to extend the adverse possession further into the disputed lands. N.D.C.C. § 28-01-07.

IV

[¶14] The Dahls also argue the district court erred when it determined the Hovets obtained ownership of the disputed lands by acquiescence, because its determination that there was mutual recognition of the road as the boundary was not supported by the record.

[¶15] "The doctrine of acquiescence applies when parties mutually mistake a boundary as a property line." *Gimbel v. Magrum*, 2020 ND 181, ¶ 11, 947 N.W.2d 891. This Court has explained:

> The doctrine of acquiescence is separate from adverse possession and may apply when all of the elements of adverse possession cannot be met. The doctrine of acquiescence allows a person to acquire property when occupying part of a neighbor's land due to an honest mistake about the location of the true boundary, because the adverse intent requirement of the related doctrine of adverse possession could not be met. To establish a new boundary line by the doctrine of acquiescence, it must be shown by clear and convincing evidence that both parties recognized the line as a boundary, and not a mere barrier, for at least 20 years prior to the litigation. Mutual recognition of the boundary may be inferred by a party's conduct or silence. The determination whether there has been mutual recognition of a boundary is a question of fact, which we review under the clearly erroneous standard on appeal.

*Moody*, 2015 ND 204, ¶ 23 (cleaned up).

[¶16] The district court found acquiescence occurred because a road is the same type of barrier as the definite boundary discussed by this Court in *McCarvel v. Perhus*, 2020 ND

267, ¶ 11, 952 N.W.2d 86, and testimony showed the Hovets acted like the road was the boundary and two neighbors thought the road was the boundary.

[¶17] In *McCarvel*, a road divided a small tract of land from the rest of a larger tract. 2020 ND 267, ¶ 5. During the statutory twenty years, the neighbors had maintained a dike, planted trees, mowed the grass, maintained a driveway, and reported the title owner for trespass when an employee drove a farm implement over the disputed land, causing a rut. *Id.* at ¶ 7. This Court affirmed the district court's finding of acquiescence because there was no communication about the boundary line and a court may infer mutual recognition of a boundary line when parties remain silent. *Id.* at ¶ 14.

[¶18] Here, the district court erred in finding acquiescence in reliance on the testimony of two neighbors regarding their impression of the true boundary. The parties, Myron Hovet, Marcia Hovet, Nevin Dahl, and Laura Dahl, all testified they understood the property line was the section line and not the road. The doctrine of acquiescence requires the parties to mutually mistake a boundary as the property line. *Gimbel*, 2020 ND 181, ¶ 11. Because the evidence does not support a finding of mutual mistake as to the boundary, the district court erred in its alternate conclusion that the Hovets are the true owners of the disputed property under the doctrine of acquiescence.

V

[¶19] We have considered all other arguments raised and determined that they are either unnecessary to our decision or without merit. We reverse the district court's order and judgment and remand for the district court to enter judgment quieting title by adverse possession to the driveway and cultivated land around the trees and caragana in the Hovets, and quieting title in the remainder of the disputed land in the Dahls.

[¶20]   Jon J. Jensen, C.J.
        Daniel J. Crothers
        Lisa Fair McEvers
        Jerod E. Tufte
        Douglas A. Bahr