2008 ND 183

George BROWN, Plaintiff and Appellee

v.

Jerry BRODELL, Sr., and Jerry (Friz) Brodell, Jr., Defendants and Appellants.

No. 20080005.

Supreme Court of North Dakota.

Oct. 22, 2008.

Roger J. Minch, Serkland Law Firm, Fargo, ND, for plaintiff and appellee.

Cameron D. Sillers, Cameron D. Sillers, PC, Langdon, ND, for defendants and appellants.

VANDE WALLE, Chief Justice.

[¶ 1] Jerry Brodell, Sr. and Jerry Brodell, Jr. appealed from a district court judgment holding that the doctrine of acquiescence did not apply to their land dispute with George Brown. We affirm, concluding that the decision of the district court was not clearly erroneous.

## I.

[¶ 2] The parties own adjoining property in Freeborn Township in Eddy County. Jerry Brodell, Sr. has owned and occupied the southwest quarter of Section 19 since 1951. George Brown has owned the southeast quarter of Section 19 since 1992. Before George Brown purchased his land, the southeast quarter was owned by Emma Olson. In 1976, Emma Olson had a surveyor come to her land, apparently to conduct a survey. After the surveyor marked the land, Emma Olson had a fence [Olson Fence] erected along the survey line, separating her quarter from Jerry Brodell, Sr.'s land. Emma Olson's purpose in having the fence built was to keep her cattle from roaming onto neighboring properties. A survey conducted in 2005 revealed that the Olson Fence was not on the property line. Rather, it veered off the property line, and angled across the southeast quarter, effectively placing two to three acres of the Olson/Brown property on Jerry Brodell, Sr.'s side of the fence. George Brown testified that the area along the property line is marked by high, steep hills and a deep creek. Jerry Brodell, Sr. has described the area between the quarters as "pretty wicked stuff." The Olson Fence, however, was erected on milder terrain.

[¶ 3] Included below is a diagram of the disputed acreage from the record. The diagram has been amended by replacing prior typewritten designations with labels that reflect the fence names used in this opinion, indicating the approximate fence locations. Quarter designations have also been added as reference points.

SECTION 19, T15ON, R62W

[¶ 4] Eugene Gleason was hired to help construct the Olson Fence in 1976 and, from 1978 to 1987, rented property from Emma Olson that included the disputed acreage. Eugene Gleason testified that, during his tenancy on the land, he considered the Olson Fence to be the boundary between the two quarters. However, Eugene Gleason noted that, when building the fence, his instructions were to assure that the Olson Fence would be located on Emma Olson's property.

[¶ 5] Jerry Brodell, Sr. and Jerry Brodell, Jr. both testified that they have believed the Olson Fence to signify the boundary line between the two properties since its erection. Jerry Brodell, Sr. has farmed the southwest quarter since purchasing it, and after the Olson Fence was built, Jerry Brodell, Sr and Jerry Brodell, Jr. began farming directly up to the fence line. They continued farming parts of the disputed acreage until 2005. Jerry Brodell, Sr. testified that he had never crossed to the eastern side of the Olson Fence, nor had he seen anyone cross from the other side. Jerry Brodell, Sr. posted a no hunting sign on his side of the Olson Fence.

[¶ 6] George Brown has paid taxes on the entire southeast quarter, including the disputed acreage, since he purchased the land from Emma Olson in 1992. George Brown also posted a no hunting sign on his side of the Olson Fence. Jerry Brodell, Sr. and Jerry Brodell, Jr. used the disputed acreage for farming and livestock without protest from George Brown. Prior to 2005, George Brown did not cross to the western side of the Olson Fence for any purpose. Shortly after George Brown purchased the quarter, his livestock crossed over to Jerry Brodell, Sr.'s side of the Olson Fence, and George Brown paid

Jerry Brodell, Sr. for damages incurred by the cattle, including for injury to the disputed acreage. George Brown stated that, in making the payments for damages, he followed the estimates of an insurance adjuster.

[¶ 7] George Brown testified that he long suspected the Olson Fence did not represent the true property line between the southeast and southwest quarters. However, it was not until he had a survey conducted on the land in 2005 that he discovered the Olson Fence was set well off the property line into the southeast quarter. After the survey, George Brown erected a new fence [Brown Fence] between the quarters, just off the property line. Upon discovering the Brown Fence, and believing it to be on his land, Jerry Brodell, Sr. had the fence removed.

[¶ 8] George Brown filed suit in district court to establish the boundary line, and to recover damages for the survey, construction, and removal of the Brown Fence. Jerry Brodell, Sr. and Jerry Brodell, Jr. argued that the doctrine of acquiescence had given them ownership of the land on which the Brown Fence was erected, that they were entitled to the land, and had therefore not committed a conversion when having the fence removed. The district court held the doctrine of acquiescence did not apply, as Jerry Brodell, Sr. and Jerry Brodell, Jr. had not established by clear and convincing evidence that both parties considered the Olson Fence to be the legal boundary between the quarters.

## II.

[¶ 9] The doctrine of acquiescence allows a property owner to acquire neighboring property due to an honest mistake over the location of the boundary line. *James v. Griffin*, 2001 ND 90, ¶ 10, 626 N.W.2d 704. To establish a new boundary line by the doctrine of acquiescence, it must be shown by clear and convincing evidence that both parties recognized the line as a boundary, and not a mere barrier, for at least 20 years prior to the litigation. *Knutson v. Jensen*, 440 N.W.2d 260, 262 (N.D.1989). Like its sister doctrine of adverse possession, the doctrine of acquiescence allows for the principle of tacking to reach the 20–year requirement. *Bernier v. Preckel*, 60 N.D. 549, 557, 236 N.W. 243, 247 (1931). In the absence of a conventional agreement, mutual recognition may be inferred from a party's conduct or silence. *Prod. Credit Ass'n of Mandan v. Terra Vallee, Inc.*, 303 N.W.2d 79, 86 (N.D.1981).

[¶ 10] The burden of proving acquiescence lies with the party claiming property to the exclusion of the true owner. *Manz v. Bohara*, 367 N.W.2d 743, 748 (N.D.1985). Whether there has been mutual recognition of a boundary is a question of fact, and will be reviewed on appeal under a clearly erroneous standard. *Knutson*, 440 N.W.2d at 262.

[¶ 11] Jerry Brodell, Sr. and Jerry Brodell, Jr. begin by arguing that the district court had an erroneous understanding of the law, pointing to occasions at trial where George Brown's counsel argued that silence and conduct cannot be used to show acquiescence. Jerry Brodell, Sr. and Jerry Brodell, Jr. argue that, since the district court did not correct counsel on these misstatements, it implies the court also believed that interpretation of the law.

[¶ 12] It is not clear that George Brown's counsel was arguing that silence can never be evidence of acquiescence, and it is not apparent that the district court misunderstood the principles of acquiescence during trial. In fact, on several occasions, the court noted that it would hear all evidence and determine the appli-

cable law at a later time. Moreover, if there is a discrepancy between a trial court's oral and subsequent written statements, the written statements control. *Wetzel v. Schlenvogt*, 2005 ND 190, ¶ 26, 705 N.W.2d 836. In its written opinion, the court properly applied the doctrine, and noted that acquiescence may be inferred from a party's silence and conduct. The court considered the parties' postings on the Olson Fence, that George Brown did not object to Jerry Brodell, Sr. and Jerry Brodell, Jr. farming to the fence line, and George Brown's payment of property taxes on the disputed acreage. The district court weighed the evidence before it and concluded that, under the totality of the evidence, Jerry Brodell, Sr. and Jerry Brodell, Jr. had failed to show by clear and convincing evidence that all parties involved viewed the Olson Fence as the boundary between the quarters.

[¶ 13] The district court was not clearly erroneous in reaching its decision. It is undisputed that Jerry Brodell, Sr. and Jerry Brodell, Jr. believed the Olson Fence to be the boundary line for a sufficient period to satisfy the 20–year requirement. However, mutual recognition requires that George Brown and Emma Olson also recognized the fence as the boundary. As to George Brown, Jerry Brodell, Sr. and Jerry Brodell, Jr. stress George Brown's silence while they farmed up to the Olson Fence line, George Brown's payment for damages inflicted by his cattle on the disputed property, and that George Brown posted—and allowed them to post—a no hunting sign on the Olson Fence, a practice typically exercised upon a boundary marker. To establish Emma Olson's belief in the Olson Fence as the boundary line, Jerry Brodell, Sr. and Jerry Brodell, Jr. point to the testimony of Eugene Gleason, Emma Olson's tenant for the better part of a decade and a man who assisted in constructing the Olson Fence. Eugene Glea-son personally believed the Olson Fence to be the boundary line, and testified that the fence was constructed upon the survey lines that Emma Olson had ordered in 1976.

[¶ 14] While there is some evidence in the record to support a finding of mutual recognition, there is also ample evidence indicating that George Brown and Emma Olson had not viewed the Olson Fence as the boundary. While George Brown sat silently for 13 years as Jerry Brodell, Sr. and Jerry Brodell, Jr. farmed up to the fence line, he has also paid property taxes on the disputed acreage since obtaining the southeast quarter in 1992. While George Brown paid Jerry Brodell, Sr. and Jerry Brodell, Jr. for damages incurred by his livestock on the disputed acreage, he also testified that he had relied upon an insurance adjuster's estimate to determine the amount to be paid. While Eugene Gleason may have believed that the Olson Fence was the property line, there is no evidence as to what Emma Olson herself believed the boundary line to be.

[¶ 15] Most significantly, there is the evidence, reinforced by Jerry Brodell, Sr. and Jerry Brodell, Jr.'s own testimony, that Emma Olson's purpose for constructing the Olson Fence was to keep her cattle from crossing onto Jerry Brodell, Sr.'s land. Furthermore, Eugene Gleason stated that he was instructed to build the fence on Emma Olson's own land. While the area along the property line was described as "wicked stuff," the Olson Fence was built at a location less rugged and more compatible with constructing a fence. The 1976 survey itself is not in the record, and there is no other evidence in the record which indicates Emma Olson's motive behind ordering the survey. While Jerry Brodell, Sr. and Jerry Brodell, Jr. insist that such a survey would only be done to determine the property line upon which to

construct the fence to keep cattle in, it is not clearly erroneous to believe that it was simply to find the best location to erect a barrier for livestock, that Emma Olson wanted such a barrier to be located on her land, and built along the calmest terrain possible.

## III.

[¶ 16]   The district court was not clearly erroneous in finding Jerry Brodell, Sr. and Jerry Brodell, Jr. had failed to prove, by clear and convincing evidence, that George Brown and Emma Olson believed the Olson Fence to represent the boundary line. We affirm the district court's judgment holding that the doctrine of acquiescence does not apply to the parties' boundary dispute.

[¶ 17] MARY MUEHLEN MARING, DALE V. SANDSTROM, DANIEL J. CROTHERS, and CAROL RONNING KAPSNER, JJ., concur.