Filed 2/22/18 by Clerk of Supreme Court

IN THE SUPREME COURT

STATE OF NORTH DAKOTA

2018 ND 57

Julie Anne Sauter, as Trustee of the

Julie Anne Sauter Living Trust

Dated February 12, 2014, Plaintiff and Appellee

v.

James Miller and Carol Miller, Defendants and Appellants

No. 20170260

Appeal from the District Court of Bowman County, Southwest Judicial District, the Honorable Dann E. Greenwood, Judge.

AFFIRMED.

Opinion of the Court by VandeWalle, Chief Justice.

Allison R. Mann (argued) and Nathan M. Bouray (appeared), Dickinson, ND, for plaintiff and appellee.

Dennis W. Lindquist, Dickinson, ND, for defendants and appellants.

Sauter v. Miller

No. 20170260

VandeWalle, Chief Justice.

[¶1] James and Carol Miller appealed from a judgment quieting title to certain real property in favor of Julie Sauter. The Millers argue the district court erred in finding Sauter acquired ownership of the disputed property by adverse possession, finding the boundary of the property was established by acquiescence, finding the Millers breached their contract and trespassed on Julie Sauter’s property, and awarding Julie Sauter attorney’s fees.

[¶2] We affirm the judgment on acquiescence, breach of contract, trespass, and attorney’s fees. Because we affirm the judgment on the issue of acquiescence, we do not reach the issue of adverse possession.

I

[¶3] The Millers and Julie Sauter own property with a common border in Bowman County in the southwest quarter of section 13, township 129 north, range 103 west of the 5th P.M. The parties dispute the ownership of a 55-60 foot strip of land equaling approximately two acres located on the Sauter side of the fence separating the properties.

[¶4] The Sauter property has been owned by Julie Sauter’s family since her father, Oscar Greni, purchased it in 1942. Julie Sauter personally obtained ownership of the Sauter property in 1990. Sauter transferred the property to the Julie Sauter Trust in 2014. Since taking ownership in 1990, Julie Sauter has leased the Sauter property to different parties for grazing purposes. A fence (“Original fence”), running east and west along the Sauter property and the northeast quarter of the southwest quarter of section 13, was constructed sometime before the 1960s and remained in place until it was removed by the Millers in 2014.

[¶5] Prior to taking ownership in 2013, the Miller property was owned by Kurt and Katina Heinrich. In 2012, Julie Sauter and the Heinrichs entered into a grazing lease for a two-year period expiring in 2014. However, before the lease expired, the Heinrichs sold their property to the Millers and no longer had use for the Sauter property. The Millers did not have the property surveyed prior to the purchase. Julie Sauter allowed the Heinrichs to sublease the land to the Millers for the 2013 grazing year. For the 2014 grazing season, Julie Sauter and the Millers entered into a new lease.

[¶6] In 2013, the Millers wanted to drill a water well on their property which required the land to be surveyed. The survey revealed the Original fence did not follow the actual boundary line of the two properties. The Millers tore down the Original fence, constructed a new fence on the surveyed boundary line, and drilled a water well on the disputed property.

[¶7] Julie Sauter brought an action against the Millers, and the district court quieted title to the property in favor of Julie Sauter and dismissed the Millers’ counterclaims. The district court found Sauter is the legal owner of the disputed property under the theories of adverse possession and acquiescence. The district court also ordered damages for breach of contract, trespass, and attorney’s fees in favor of Sauter.

II

[¶8] In an appeal from a bench trial, the district court’s findings of fact are reviewed under the clearly erroneous standard of review and its conclusions of law are fully reviewable. 
Moody v. Sundley
, 2015 ND 204, ¶ 9, 868 N.W.2d 491. “A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made.” 
Id.
 In a bench trial, the district court is the determiner of credibility issues and we will not second-guess the district court on its credibility determinations. 
Id.

III

[¶9] The Millers argue the district court erred because there was no proof of acquiescence by themselves or their predecessors in interest, the statutory period for possession was disturbed, and acquiescence is inapplicable because the Original fence was nothing more than a barrier.

[¶10] “The doctrine of acquiescence allows a property owner to acquire neighboring property due to an honest mistake over the location of the boundary line.” 
Brown v. Brodell
, 2008 ND 183, ¶ 9, 756 N.W.2d 779
. 
“To establish a new boundary line by the doctrine of acquiescence, it must be shown by clear and convincing evidence that both parties recognized the line as a boundary, and not a mere barrier, for at least 20 years prior to the litigation.” 
Id.
 A boundary line acquiesced in must be definite, certain and not speculative, and open to observation. 
Manz v. Bohara
, 367 N.W.2d 743, 746 (N.D. 1985). Moreover, acquiescence requires possession up to a visible line marked clearly by monuments, fences, or the like. 
Id.
 The burden of proving acquiescence lies with the party claiming property to the exclusion of the true owner. 
Brodell
, 2008 ND 183, ¶ 10, 756 N.W.2d 779. “Whether there has been mutual recognition of a boundary is a question of fact, and will be reviewed on appeal under a clearly erroneous standard.” 
Id.

[¶11] “Like its sister doctrine of adverse possession, the doctrine of acquiescence allows for the principle of tacking to reach the 20-year requirement.”
 Id.
 at ¶ 9. “In the absence of a conventional agreement, mutual recognition may be inferred from a party’s conduct or silence.” 
Id. 
Accordingly, “acquiescence in a boundary line is binding on the parties thereto and those claiming under them, and where successive adverse occupants hold in privity with each other under the same claim of title, the time limit for maintaining an action may be computed by the last occupants from the date the cause of action accrued against the first adverse user.” 
James v. Griffin
, 2001 ND 90, ¶ 11, 626 N.W.2d 704. “[W]hen tacking is relied upon to meet the 20-year period, it must result in a single continuous acquiescent possession.” Id.

[¶12] It is undisputed Julie Sauter believed the Original fence to be the boundary line for the Sauter property for a sufficient period to satisfy the 20-year requirement. However, mutual recognition requires the Millers and/or their predecessors in interest believed so as well. Julie Sauter testified the Original fence had been in existence since she gained ownership in 1990, and the fence has always been recognized as a boundary line for the Sauter property. Julie Sauter testified prior to the Millers’ actions, nobody had ever expressed the Original fence was not the boundary line between the Sauter and Miller properties. The Millers did not offer any disputing evidence or call any previous owners to testify to the contrary.

[¶13] Because there was evidence supporting the district court’s finding of mutual recognition, and the Millers did not produce any evidence to the contrary, the finding was not clearly erroneous.

Statutory Period

[¶14] The Millers argue the district court erred in using the existence of the Original fence from the 1960s until the Millers removed it in 2014 as the determination the statutorily-required 20 years of possession was satisfied. The Millers contend the statutory period for adverse possession/acquiescence was disturbed because the Original fence was torn down prior to acceptance of service of the summons and complaint.

[¶15] The statute of limitations for quiet title actions is contained in Section 28-01-04, N.D.C.C., which provides:

No action for the recovery of real property or for the possession thereof may be maintained, unless the plaintiff, or the plaintiff’s ancestor, predecessor, or grantor, was seized or possessed of the premises in question within twenty years before the commencement of such action. 

[¶16] A party is barred from bringing an acquiescence action if they did not maintain possession of the property within 20 years of the action. 
Griffin
, 2001 ND 90, ¶ 12, 626 N.W.2d 704; 
see also Hageness v. Davis
, 2017 ND 132, ¶ 20, 896 N.W.2d 251, cert. denied, 138 S.Ct. 458 (2017) (recognizing the plain language of N.D.C.C. § 28-01-04 states it applies in actions for the recovery or possession of real property and held it applies in quiet title actions); 
Markgraf v. Welker
, 2015 ND 303, ¶ 31, 873 N.W.2d 26 (acknowledging N.D.C.C. § 28-01-04 applies to adverse possession, acquiescence, and other types of quiet title actions). The 20-year period is measured back from the commencement of the action. 
Davis
, 2017 ND 132, ¶ 20, 896 N.W.2d 251, cert. denied, 138 S.Ct. 458 (2017); 
Griffin
, 2001 ND 90, ¶ 12, 626 N.W.2d 704.

[¶17] The Millers rely on 
James v. Griffin
, to support their claim that the 20-year period was disturbed. 
Griffin
, 2001 ND 90, 626 N.W.2d 704. In 
Griffin
, we decided once prior acquiescence of a boundary has been destroyed by a nonacquiescent possession, the 20-year period for establishing acquiescence begins running anew. 
Id. 
at ¶¶ 14-15. In 
Griffin
, the nonacquiescent possession was a break in the chain of title. 
Id. 
at ¶¶ 9, 15. Because there was a break in the chain of title during the 20 years preceding the commencement of the action, possession was not continuous, and therefore, the claimant did not hold the property adversely for the statutory period. 
Id
. at ¶ 15.

[¶18] The Millers argue the removal of the Original fence constitutes nonacquiescent possession, and under the rationale in
 Griffin
, the statutory period for acquiescence was disturbed. However, this case is distinguishable from 
Griffin
 because the removal of the Original fence was actually the conduct that brought rise to the action. The Millers did not provide any evidence of nonacquiescent possession in the 20 years preceding this action. Although the record is not entirely clear on the exact time, it is undisputed the Original fence between the Sauter/Miller property had been in place continuously from after 1960 until the Millers’ removal of the Original fence but, in any event, in excess of 20 years.

[¶19] Because Julie Sauter possessed the disputed property within 20 years of commencing the action, and the 20-year time period was not disturbed by the Millers’ removal of the fence, the district court did not err in finding the statutory requirement of 20 years was satisfied.

Boundary Line

[¶20] The Millers argue the district court erred in finding the Original fence served as a boundary line because the fence was nothing more than an unkept barrier that was left in disrepair. Julie Sauter argues it has always evidenced the boundary line of the Sauter property. The district court found the Original fence served as a barrier for livestock and was also intended to evidence the boundary between what is now the Sauter property and what is now the Miller property.

[¶21] A property owner does not acquiesce in a fence as a boundary merely because he builds the fence upon his own property and not upon the property line.
 Production Credit Ass’n of Mandan v. Terra Vallee, Inc.
, 303 N.W.2d 79, 85 (N.D. 1981). “The intent must have been to establish the fence as the boundary, not a mere barrier between the properties.” 
Id.

[¶22] Julie Sauter testified the Original fence has been in place since she was a young child growing up around the property in the 1960s. She further testified she used the fence to communicate to her tenants, lessees, and neighbors where the boundaries were and to keep the livestock where they belonged. Julie Sauter testified prior to the Millers, nobody had ever expressed to her that the Original fence was not the boundary line between the Sauter and Miller property. The Millers testified the fence was unkept and in disrepair. The Millers also testified they did not think the fence was the proper boundary when they visited the property prior to purchasing the land from the Heinrichs. Notably, the Millers still purchased the land, did not have the acreage surveyed, and entered into a lease with Julie Sauter that contained language denoting the fence as part of the Sauter property.

[¶23] Because Julie Sauter was in constant possession or control of the strip of land for more than 20 years, and there is no evidence any of the Millers’ predecessors disputed or challenged the establishment of the fence as a boundary within that time, the district court did not err in finding the Original fence served as a boundary line.

Breach of Contract/ Trespass

[¶24] The Millers argue they could not be liable for breach of contract or trespass prior to adjudication of the true ownership of the disputed property. The district court found the Millers breached a condition of the lease agreement by failing to maintain the fences located on the subject land. The district court further found the Millers trespassed on the subject land by removing the Original fence and drilling a water well on the Sauter property. The lease agreement gave the Millers permission to use the land for grazing purposes; however, it expressly prohibited them from committing waste on the property and from removing any fences or appurtenances on the property. The district court ordered the Millers pay $1,875 to replace the Original fence. 

[¶25] The Millers contend right to ownership of land and passage of title, as a consequence of adverse possession or acquiescence, occur when the judgment is entered. The district court found the right to ownership of land and passage of title, as a consequence of adverse possession or acquiescence, occur upon the passage of 20 years during which the elements of adverse possession/acquiescence are met. 

[¶26] This Court has not expressly ruled on this issue but the district court relied on the opinions from several jurisdictions in making its determination. 
See Fraley v. Minger
, 829 N.E.2d 476, 487 (Ind. 2005) (holding title by adverse possession passes to the claimant by law at the end of the possessory period); 
Garriott v. Peters
, 878 N.E.2d 431, 438 (Ind. Ct. App. 2007) (recognizing title passes to the adverse possession claimant at the end of a 10-year period during which all the elements of adverse possession are met); 
Riverwood Commercial Properties, Inc. v. Cole
, 639 A.2d 714, 715 (N.H. 1994) (acknowledging that after an adverse possessor possesses land for 20 years in a manner and under a claim adverse to that of the actual owner, the owner can no longer bring an action to recover the land, and title passes to the adverse possessor); 
El Cerrito, Inc. v. Ryndak
, 376 P.2d 528, 532 (Wash. 1962) (recognizing when realty has been held by adverse possession for the statutory period, such possession ripens into an original title which cannot be divested by acts other than those required where title was required by deed).

[¶27] We agree with the district court. Title by acquiescence and title by adverse possession occurs when the statutory period for possession has been satisfied. Under the Millers’ theory, the practical effect would leave the true owner without remedy for any pre-adjudication damage done to their property. Here, if the passage of title did not occur until after adjudication, Julie Sauter would be left without remedy for the damages that arose from the Millers’ breach of contract and cost of reconstructing her fence.

[¶28] Because Julie Sauter had possession for the statutory period, title passed at the end of the 20 years. Accordingly, the district court did not err in making findings on breach of contract and trespass.

Attorney’s fees and Damages

[¶29] The Millers argue the district court abused its discretion by awarding attorney’s fees and damages. The district court ordered the Millers pay attorney’s fees/costs for removing a fence line in violation of a temporary injunction, and as a sanction resulting from discovery misconduct. On October 19, 2015, the district court issued an order for preliminary injunction which provided:

Plaintiff and Defendants may not further improve, change, or otherwise alter the property between the Original Fence line and the fence which was recently constructed by Defendants (“Disputed Property”), except that the Defendants are specifically authorized to place a single water tank and maintain the well on the Disputed Property and maintain the fence constructed by Defendants as it exists as of this Order. 

[¶30] Sometime after October 19, 2015, the Millers removed the fence on the east side of the Disputed Property, installed solar panels, and installed a fence around the water tank which included cemented-in posts.

[¶31] Under N.D.R.Civ.P. 65(i), a district court may punish disobedience of a preliminary injunction as a contempt. Moreover, a district court may impose a monetary sanction for a loss or injury suffered as a result of contempt, including an amount to reimburse the party for costs and expenses incurred as a result of the contempt. N.D.C.C. § 27-10-01.4. The district court “has considerable discretion in awarding costs and attorney fees, and its decision will not be overturned on appeal absent an abuse of discretion.” 
Giese v. Giese
, 2002 ND 194, ¶ 11, 653 N.W.2d 663. “A district court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned determination, or it misinterprets or misapplies the law.” 
Tillich v. Bruce
, 2017 ND 21, ¶ 7, 889 N.W.2d 899.

[¶32] The district court also ordered a motion to compel the Millers to respond to Sauter’s discovery requests. Under N.D.R.Civ.P. 37(a)(5)(A), if a motion to compel is granted, the district court “must, after giving an opportunity to be heard, require the party or deponent whose conduct necessitated the motion, the party or attorney advising that conduct, or both to pay the movant’s reasonable expenses incurred in making the motion, including attorney’s fees.” 

[¶33] The Millers did not cite to any specific error made by the district court, and the district court explained its reasons for imposing attorney’s fees related to the Millers’ improper behavior. The award of attorney’s fees and costs was not an abuse of discretion. 

IV

[¶34] We affirm the district court’s judgment on acquiescence, breach of contract, trespass, and attorney’s fees.

[¶35] Gerald W. VandeWalle, C.J.

Jon J. Jensen

Daniel J. Crothers

I concur in the result.

Lisa Fair McEvers

Tufte, Justice, concurring in part and concurring in the result.

[¶36] I concur in the Majority opinion except as to ¶¶ 17-19, and I concur in the result.  The Majority, at ¶ 18, distinguishes 
Griffin
 because the break in acquiescent possession was the event that led to this court action.  The factual difference in this case is that in 
Griffin
, a fence was built on the actual plat line to prevent continuing encroachment, whereas here a fence was torn down when the true owner realized it was not at the location indicated by a survey.  In both cases, a survey led to building or removing a fence, which resulted in the litigation on appeal.  I would overrule 
Griffin
, rather than distinguish it, and adopt the reasoning stated in the dissenting opinion.  Because title passes upon completion of an unbroken twenty-year period, Majority, at ¶ 28, a break in acquiescent possession prior to litigation should not restart a clock that has already run the required twenty years.  As the Griffin dissenters explained, I would require only that some part of an unbroken 20-year period of acquiescent possession must occur within 20 years of initiating litigation.

[¶37] Jerod E. Tufte