**FILED**
**IN THE OFFICE OF THE**
**CLERK OF SUPREME COURT**
**DECEMBER 8, 2022**
**STATE OF NORTH DAKOTA**

# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2022 ND 217

Scott Kubik,                                                      Plaintiff and Appellant

v.

Dominic Hauck,                                             Defendant and Appellee

## No. 20220091

Appeal from the District Court of Dunn County, Southwest Judicial District, the Honorable Rhonda R. Ehlis, Judge.

AFFIRMED.

Opinion of the Court by Tufte, Justice.

Jordan L. Selinger, Dickinson, N.D., for plaintiff and appellant.

Sandra K. Kuntz, Dickinson, N.D., for defendant and appellee.

**Tufte, Justice.**

[¶1]  Scott Kubik appeals from a judgment quieting title in favor of Dominic Hauck on a property line dispute and denying his claim of acquiescence. We affirm, concluding the district court did not clearly err in finding that Kubik failed to show by clear and convincing evidence that Hauck or his predecessors in interest recognized the original fence line as the property line.

I

[¶2]  Kubik and Hauck are adjacent landowners. Kubik owns the SW1/4 of Section 2, Township 141 North, Range 95 West in Dunn County, which he purchased in 1997 from his mother and has been owned by his family since 1911. Hauck owns the NW1/4 of Section 2, which he purchased at auction in 2018 from the Tony Sickler Trust. Prior to the Trust's ownership, the Sickler family had owned the NW1/4 since the 1930s. A wire fence ran east and west near the property line. After a survey of his land, Hauck discovered the fence was several feet inside of his property. Hauck removed the original fence and built a new fence consistent with the property line identified by the survey.

[¶3]  In 2020, Kubik sued Hauck to quiet title in the strip of land located on the south side of the original fence line (i.e., the land between the original fence line and the new fence line) under adverse possession and acquiescence, and for trespassing and damaging his property. Hauck counterclaimed to quiet title in the disputed property. After a bench trial, the district court quieted title in favor of Hauck based on the survey showing that he is the rightful owner and rejected Kubik's claims of adverse possession, acquiescence, trespass, and damages.

II

[¶4]  "In an appeal from a bench trial, the district court's findings of fact are reviewed under the clearly erroneous standard of review, and its conclusions of law are fully reviewable." *McCarvel v. Perhus*, 2020 ND 267, ¶ 9, 952 N.W.2d

86. "A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if there is no evidence to support it, or if, after reviewing all of the evidence, this Court is convinced a mistake has been made." *Id.* The district court is the determiner of credibility issues in a bench trial, and we will not second-guess its credibility determinations. *Id.*

## III

[¶5]  Kubik argues the original fence line was the established boundary between his property and the Hauck/Sickler property and the district court erred by not quieting title in his favor under the doctrine of acquiescence.

[¶6]  "Boundary by acquiescence allows a property owner to acquire neighboring property due to an honest mistake over the location of the boundary line." *McCarvel*, 2020 ND 267, ¶ 10 (quotation omitted). "To establish a new boundary line by the doctrine of acquiescence, it must be shown by clear and convincing evidence that both parties recognized the line as a boundary, and not a mere barrier, for at least 20 years prior to the litigation." *Id.* at ¶ 11. "A boundary line acquiesced in must be definite, certain and not speculative, and open to observation." *Id.* "[A]cquiescence requires possession up to a visible line marked clearly by monuments, fences, or the like." *Id.* "In the absence of a conventional agreement, mutual recognition may be inferred from a party's conduct or silence." *Id.* Whether there has been mutual recognition of a boundary is a question of fact, reviewed under the clearly erroneous standard. *Id.* at ¶ 9.

[¶7]  The district court found that the original fence was merely a barrier between the properties, not a mutually recognized boundary. The court found that Kubik honestly believed the original fence to be the actual boundary, but that Kubik failed to show by clear and convincing evidence that the Sicklers, the Trust, or Hauck recognized the original fence line as the boundary for the required 20 years. The court noted that the testimony showed that "no one really knows who owns the [original] fence, as both parties have appeared to work on it over the years," including maintenance by Kubik, the Sicklers, and renters of both properties. The court found that the Sicklers had moved the fence posts over the years due to erosion, and that the fence was a barrier to

2

contain cattle and horses. The court noted that the evidence showed the fence was in disrepair. It found that the disputed property was conservation reserve program (CRP) land and pasture land, and that the CRP land was hayed every third year and that animals, at times over the years, had been pastured on the land. The court found that no improvements had been made to the land by Kubik, and that it does not appear Kubik and the Sicklers ever discussed the boundary line. Hauck's land surveyor, who was certified as a surveying expert at trial, opined that the original fence was built in the 1940s. Alfred Sickler, a trustee of the Tony Sickler Trust since 2016 and Tony Sickler's son, testified that the Trust paid the property taxes on the NW1/4 until it was sold to Hauck and that prior to selling, the Trust advertised all 160 acres in the NW1/4 for sale. Alfred Sickler testified the full 160 acres were sold to Hauck. Hauck testified that he believed the Trust paid taxes on the full 160 acres in 2018 and he and his wife paid taxes the following years.

[¶8]   Kubik contends that the original fence was the mutually recognized boundary and that the Sicklers' moving of the fence posts was to maintain its line, not to shift it north or south. Alfred Sickler testified that he and his family maintained the fence and moved posts to "try to stay in line with where the fence was at, but . . . if the sand got too deep or [you] couldn't dig a post hole, you just moved it over maybe just one post or two posts." He testified he did not view the fence as a boundary. Bobby Kubas, who rented the NW1/4 from the Trust from 2014 through 2018, testified he performed extensive maintenance on the fence in 2014, replacing posts and wire, to contain his cattle. Kubas testified he was required to maintain the fences under his lease agreements with the Trust. On the basis of the evidence, the court may reasonably infer that the Sicklers and the Trust did not regard the fence line as the boundary line, but merely a barrier to contain cattle.

[¶9]   Kubik argues the Sicklers' use and maintenance of the fence shows they did not object to the fence's location or demand it be moved. While the parties' conduct or silence may lead to an inference that they mutually recognized a fence as a boundary under certain circumstances, a permissible inference in this case is that they merely regarded it as a barrier to contain cattle. *See Sauter v. Miller*, 2018 ND 57, ¶ 21, 907 N.W.2d 370 ("A property owner does

not acquiesce in a fence as a boundary merely because he builds the fence upon his own property and not upon the property line. . . . The intent must have been to establish the fence as the boundary, not a mere barrier between the properties."); *Brown v. Brodell*, 2008 ND 183, ¶¶ 14-16, 756 N.W.2d 779 (concluding district court did not clearly err in finding no mutual recognition of boundary because, in part, party opposing acquiescence paid property taxes on disputed acreage and evidence showed prior owner constructed fence as a barrier to keep cattle contained). Accordingly, the district court did not clearly err in finding that Kubik failed to show by clear and convincing evidence that the Sicklers, the Trust, or Hauck recognized the original fence line as the boundary.

[¶10] Kubik asserts the telephone easement given by the Trust was erroneously relied upon by the district court in denying his claim of acquiescence. The court found that the Trust gave Consolidated Enterprises an easement on the NW1/4 and stated, "It is apparent that Consolidated believed the Sicklers to be the owners of the property where the easement lies, as it would be improbable that they would pay someone for an easement that did not have the authority to grant the easement." The court did not make a specific finding as to where the easement is located on the NW1/4. However, even if we agree with Kubik that the easement is not located on the disputed property, the court's findings regarding the telephone easement are not reversible error. The court did not misstate the evidence. Rather, Kubik interprets the court's findings as implicitly stating that the telephone easement was on the disputed property and that provides evidence of a lack of mutual recognition of a boundary. To the extent the court implied the easement was located on the disputed property, the court does not appear to rely on this information in any material way. We conclude that either the court did not rely on this information or, if it did, the court's ultimate finding that there was no mutual recognition of a boundary is not clearly erroneous. *See Gimbel v. Magrum*, 2020 ND 181, ¶ 13, 947 N.W.2d 891 ("Appellate courts review the record and findings as a whole and if the controlling findings are supported by the evidence, they will be upheld on appeal notwithstanding immaterial misstatements in the lower court's decision.").

4

[¶11] Kubik compares this case to *Ward v. Shipp*, 340 N.W.2d 14 (N.D. 1983), and *Sauter*, 2018 ND 57. In both *Ward* and *Sauter*, this Court concluded the district court did not clearly err in finding the parties mutually recognized a fence as a boundary under the doctrine of acquiescence. While the basic facts in this case are similar to *Ward*, the Court in *Ward*, at 16, summarily concluded that there was "sufficient evidence in the record" to support the district court's finding that the fence was intended by the parties "to be the boundary between the properties, not merely a barrier."

[¶12] In *Sauter*, 2018 ND 57, ¶ 12, the plaintiff-landowner bringing the acquiescence claim testified that "the fence has always been recognized as a boundary line." The defendants "did not offer any disputing evidence or call any previous owners to testify to the contrary." *Id.* Further, although the defendants "testified they did not think the fence was the proper boundary when they visited the property prior to purchasing the land from the [previous owners] . . . [they] still purchased the land, did not have the acreage surveyed, and entered into a lease with [plaintiff] that contained language denoting the fence as part of the [plaintiff's] property." *Id.* at ¶ 22. Unlike here, the plaintiff in *Sauter* met her burden in showing the fence was a mutually recognized boundary.

[¶13] Even if we were to conclude the facts in this case were similar enough to *Ward* or *Sauter* as to allow for a finding of mutual recognition of boundary and acquiescence in the first instance, our task as an appellate court is to determine whether the district court *clearly erred* in finding a lack of mutual recognition of boundary and acquiescence. *See Gimbel*, 2020 ND 181, ¶ 14 (concluding that although conflicting evidence existed on the issue of acquiescence, the district court is the determiner of credibility issues, and evidence existed supporting court's finding of a lack of mutual recognition). As discussed above, the court did not clearly err in finding that Hauck and his predecessors in interest did not recognize the original fence line as the property line.

IV

[¶14] Kubik asserts the district court erred by failing to award damages for Hauck trespassing upon his land and cutting a portion of his hay. The court

found that Hauck mowed a small strip of grass on Kubik's land, but that Kubik failed to show that he incurred any damages. Although the court should have awarded nominal damages, its failure to do so does not warrant reversing the judgment. *Kuntz v. Leiss*, 2020 ND 253, ¶ 7, 952 N.W.2d 35.

[¶15] We have considered the parties' remaining arguments and conclude they are either without merit or unnecessary to our decision. The judgment is affirmed.

[¶16] Jon J. Jensen, C.J.
  Gerald W. VandeWalle
  Daniel J. Crothers
  Lisa Fair McEvers
  Jerod E. Tufte